## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MEYERS DIVISION

HARRY DAVID HALL,
an individual,

          Case No.:

       Plaintiff,

v.

SYNCHRONY BANK,
a national association, and
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,

       Defendants.

_____/

### PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, HARRY DAVID HALL, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

### COMPLAINT

**COMES NOW**, Plaintiff, HARRY DAVID HALL (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, SYNCHRONY BANK (hereinafter, "Synchrony") and EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1.    This is an action brought by an individual consumer for damages for

Synchrony's violation of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Synchrony improperly credit-reported and subsequently verified objectively-inaccurate information related to consumer debt accounts allegedly owed to Synchrony on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax.

2.      Additionally, this is an action for damages for Equifax's violations of the FCRA wherein Equifax failed to maintain procedures designed to assure maximum possible accuracy when preparing and generating Plaintiff's credit reports and Equifax continued to incorrectly report such Synchrony accounts with a status asserting Plaintiff as deceased despite Plaintiff's repeated disputes to Equifax explaining and proving he was and still is alive.

## JURISDICTION, VENUE & PARTIES

3.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*

4.      Defendants are subject to the jurisdiction of this Court, as Synchrony and Equifax each regularly transact business in this District.

5.      Venue is proper in this District as Defendants each regularly conduct business in this District, and the acts and transactions described herein occur in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Charlotte County, Florida.

7.      At all material times herein, Synchrony is a national association with its

2

principal place of business located at 170 West Election Road, Suite 125, Draper, Utah 84020.

8.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

## FCRA STATUTORY STRUCTURE

9.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

10.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

11.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

12.     Under the FCRA, when a consumer reporting agency conducts any

reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

13.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

14.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

15.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not

more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

16.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

17.    At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

18.    At all material times herein, Synchrony, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with consumers residing in Charlotte County, Florida.

19.    At all material times herein, Synchrony is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

20.    At all material times herein, Synchrony reports information concerning two consumer credit card accounts to Equifax, including but not limited to two (2) tradeline accounts furnished by Synchrony, referenced by account numbers ending -5276 and -4591, respectively (hereinafter collectively, the "Accounts").

21.     At all material times herein, Plaintiff is alive and not deceased.

22.     Notwithstanding Plaintiff's irrefutable status as a living person, Synchrony reported the Accounts as "CONSUMER_DECEASED."

23.     At all material times herein, Synchrony furnishes incorrect and/or incomplete information concerning the Accounts to Equifax—continuing after Plaintiff's repeated disputes—despite receiving proof that Plaintiff is alive.

24.     Synchrony furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

25.     At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax disburses such consumer reports to third parties under contract for monetary compensation.

26.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

27.     All necessary conditions precedent to the filing of this action occurred, or

Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

28.    On or about July 7, 2005, Plaintiff opened a Lowes-branded retail credit card account serviced by Synchrony.

29.    On or about October 25, 2021, Plaintiff opened a Care Credit-branded credit card serviced by Synchrony (i.e., the "Accounts").

30.    Between October 2021 and November 2023, Plaintiff continued to use the Account and make payments on the Accounts.

31.    In other words, the Accounts were open and active as of November 2023.

32.    On or about on December 15, 2023, Plaintiff's father, Harry Walter Hall, passed away and is deceased.

33.    Notably, Harry Walter Hall also held open credit accounts with Synchrony Bank prior to his death.

34.    Between December 2023 and January 2024, Plaintiff continued to incur charges on his Synchrony credit card Accounts and continued to make payments on the Accounts.

35.    During or about February 2024, notwithstanding Plaintiff's continual and verifiable use of and payments on the Accounts, Synchrony closed the Care Credit Account.

36.    Similarly, in March 2024, Synchrony closed the Lowes Account.

## DEFENDANTS' CREDIT REPORTING OF THE ACCOUNT

37.    On or about March 25, 2025, Plaintiff obtained a copy of his credit report

as maintained by Equifax and learned that Synchrony and Equifax were inaccurately reporting the status of the Accounts as "CONSUMER_DECEASED."

38.    Following this discovery, between March 2024 and March 2025, Plaintiff disputed the reporting of the Accounts directly to Equifax approximately twelve (12) times, wherein Plaintiff advised that he was in fact still alive and advised Plaintiff's father passed away, not Plaintiff himself.

39.    Despite Plaintiff being alive and repeatedly disputing Defendants' reporting of the Accounts, Synchrony failed to report the Accounts to Equifax as open and paid as agreed and instead Synchrony continued to report the Accounts as "CONSUMER_DECEASED."

40.    As such, it is inaccurate and/or materially misleading to report the Accounts as "CONSUMER_DECEASED."

41.    Notably, neither Experian nor Trans Union reported Plaintiff as deceased on the Synchrony Accounts or any other tradeline accounts.

## PLAINTIFF'S WRITTEN DISPUTE

42.    On or about April 23, 2025, and with the assistance of his attorneys, Plaintiff sent a letter to Equifax disputing Defendants' credit reporting of the Accounts, advising that Plaintiff is in fact alive, advising that notation stating "CONSUMER_DECEASED" should be removed, and demanding that Equifax investigate and update accordingly (hereinafter, "Plaintiff's Written Dispute").

43.    Plaintiff's Written Dispute provided sufficient information to allow the Equifax to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last

8

four digits of his social security number, and his current address.

44.    Additionally, Plaintiff's Written Dispute enclosed copies of Plaintiff's father's death certificate, a photo of Plaintiff holding his Florida Driver's License with the current date displayed, excerpts from his credit report, and an affidavit sworn before a notary public stating that Plaintiff is alive in support of his dispute.

45.    Equifax received Plaintiff's Written Dispute.

46.    Equifax communicated Plaintiff's Written Dispute to Synchrony, including all enclosed documents.

47.    Synchrony received Plaintiff's Written Dispute from Equifax.

48.    Equifax failed to respond to Plaintiff's Written Dispute.

49.    On or about June 5, 2025, and because Equifax failed to respond to Plaintiff's Written Dispute, Plaintiff obtained a copy of his consumer disclosure report from Equifax.

50.    Despite Plaintiff being alive and providing Defendants proof of the same through his repeated disputes, Defendants continued to report the Accounts with a status of "CONSUMER_DECEASED."

51.    Again, Plaintiff was and still is alive.

52.    As such, it is inaccurate and/or materially misleading to report the Accounts as "CONSUMER_DECEASED."

53.    Clearly, Synchrony and Equifax each failed to conduct reasonable investigations and/or re-investigations in response to Plaintiff's Written Dispute, because if Synchrony and Equifax had conducted reasonable investigations and re-

investigations, Synchrony and Equifax would have known that Plaintiff is irrefutably still living.

54.     Synchrony's and Equifax's failure to conduct reasonable investigations and re-investigations into Plaintiff's Written Dispute was unreasonable given the information provided in Plaintiff's Written Dispute.

## DAMAGES

55.     As a result of Defendants' unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

56.     Following Plaintiff's Written Dispute, Equifax generated and published Plaintiff's credit reports containing the inaccurate notation on the Accounts.

57.     In fact, on or about February 1, 2025, Plaintiff applied for credit with Synchrony Bank to finance the purchase of a home generator and was denied due to information in his background and credit reports.

58.     Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct.

59.     Plaintiff retained Swift Law PLLC and Bannon Law Group for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

60.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of

up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

61.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' inaccurate and continued reporting of the Accounts and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with incorrect information indicating that Plaintiff had died.

62.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite being a living individual still using his credit and paying balances associated with the same, Plaintiff must simply endure Defendants' unlawful reporting of the Accounts.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to Synchrony)**

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

63.     Synchrony is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing

inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly investigate/re-investigate Plaintiff's numerous disputes, failing to review all relevant information regarding the same, and failing to request that Equifax correct the reporting of the Accounts on Plaintiff's credit reports and credit file after investigating/re-investigating Plaintiff's repeated disputes.

64.    As described above, Plaintiff is a currently living individual who used and made payments on his Synchrony Accounts following his father's death.

65.    However, Synchrony not only closed Plaintiff's Accounts following the death of Plaintiff's father but Synchrony also began reporting Plaintiff's Accounts to Equifax as "CONSUMER_DECEASED" in the accounts status field.

66.    Notably, neither Experian nor Trans Union reported Plaintiff as deceased on the Synchrony Accounts or any other tradeline accounts.

67.    Between February 2025 and April 2025, Synchrony received up to thirteen (13) disputes initiated by Plaintiff via Equifax and Synchrony received copies of all documents enclosed with Plaintiff's disputes.

68.    Importantly, Plaintiff's Written Dispute proved that Plaintiff is alive by not only repeatedly disputing to Equifax and Synchrony, but also providing copies of Harry Walter Hall's death certificate, a photo of Plaintiff holding his Florida Driver's License with the current date displayed, excerpts from his credit report, and an affidavit sworn before a notary public stating that Plaintiff is alive in support of his dispute.

69.    Following Plaintiff's disputes, Synchrony confirmed and/or verified its

12

false reporting to Equifax showing that the Accounts as "CONSUMER_DECEASED," and Synchrony failed to report the Accounts as current and paid as agreed.

70.     Synchrony's refusal to request that Equifax correct the tradelines associated with the Accounts was done intentionally, willfully, and/or knowingly as Synchrony clearly possessed knowledge of Plaintiff's ongoing use of the Accounts and monthly payments after December 2023 and clearly possessed knowledge that Plaintiff was and is alive.

71.     Synchrony's investigations/re-investigations were not conducted in good faith.

72.     Synchrony's investigations/re-investigations were not conducted reasonably.

73.     Synchrony's investigations/re-investigations were not conducted using all information reasonably available to Synchrony.

74.     As a result of Synchrony's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit applications, and he was deterred from making further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Synchrony's inaccurate and continued reporting of the Accounts and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with incorrect information indicating that Plaintiff had died.

75.     Synchrony's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

76.     Synchrony's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(as to Equifax)**

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

77.     Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

78.     Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Accounts.

79.     Despite Plaintiff being alive and a current customer up until Synchrony closed the Accounts—including ongoing use of the Accounts and payments on the

resulting balances—and despite Plaintiff's repeated disputes advising Equifax of the same, Equifax continued to unlawfully report the Synchrony Accounts as "CONSUMER_DECEASED."

80.    Such reporting of the Accounts is false and evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

81.    Notably, neither Experian nor Trans Union reported Plaintiff as deceased on the Synchrony Accounts or any other tradeline accounts.

82.    Plaintiff is alive and continues to use the Accounts and pay the balances due on the same.

83.    As such, it is inaccurate and/or materially misleading to report the Accounts as "CONSUMER_DECEASED."

84.    Plaintiff's Written Dispute Letter proved that Plaintiff is alive by not only repeatedly disputing to Equifax and Synchrony, but also providing copies of Harry Walter Hall's death certificate, a photo of Plaintiff holding his Florida Driver's License with the current date displayed, excerpts from his credit report, and an affidavit sworn before a notary public stating that Plaintiff is alive in support of his dispute.

85.    Despite Plaintiff's unequivocal proof of live provided to Equifax, Equifax *still* reported the status of the Accounts as "CONSUMER_DECEASED."

86.    Between February 2024 and the date of this Complaint, Equifax generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially

misleading information.

87.    Overall, Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Equifax credit reports and credit file.

88.    As a result of Equifax's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, was deterred from making additional/further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' inaccurate and continued reporting of the Accounts and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with incorrect information indicating that Plaintiff had died.

89.    Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

90.    Equifax's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**

16

**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)**
**(as to Equifax)**

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

91.    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1),   1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

92.    Specifically, Equifax willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

93.    For example, after receiving Plaintiff's Written Dispute, Equifax failed to request any documents from Synchrony.

94.    Instead, following Plaintiff's Written Dispute, Equifax parroted purported verifications from Synchrony, and continued to report the Accounts with information indicating that Plaintiff was deceased.

95.    Rather than conduct its own, independent investigation/re-investigation

17

regarding Plaintiff's several disputes, Equifax solely relied on Synchrony's blanket and parroted assertions that Defendants were entitled to report the Accounts with information indicating that Plaintiff had died despite Plaintiff being a living person.

96.     Equifax did not request any documents from Synchrony corroborating information furnished and/or verified by Synchrony regarding Plaintiff and the Accounts in response to any of Plaintiff's disputes, and Equifax wholly ignored the documents submitted by Plaintiff with his repeated disputes.

97.     Equifax's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

98.     Despite receiving Plaintiff's twelve (12) independent disputes and Plaintiff's Written Dispute, each of which explained that Plaintiff is a currently living individual, which allowed Equifax to determine that the Accounts must be corrected, Equifax *continued* to report the Accounts as "CONSUMER_DECEASED."

99.     As such, Equifax's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Accounts was inaccurate and Equifax failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

100.    Such reporting is false and evidences Equifax's respective failures to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

101.    Equifax's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

102.    Equifax's investigation/reinvestigations merely copied, parroted, and

relied upon the inaccurate Accounts information conveyed by Synchrony.

103.  Equifax's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

104.  Equifax's investigation/reinvestigation procedures are unreasonable.

105.  Equifax's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax.

106.  Equifax's investigation/reinvestigations were *per se* deficient by reason of these failures in Equifax's reinvestigations of Plaintiff's disputes and the Accounts.

107.  As a result of Equifax's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, was deterred from making additional/further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' inaccurate and continued reporting of the Accounts and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with incorrect information indicating that Plaintiff had died.

108.  Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

109.  Equifax's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages,

statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Synchrony and Equifax for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    An award of attorney's fees and costs; and

f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487

Sean E. McEleney, Esq., FBN 125561
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*

*~and~*

# BANNON LAW GROUP

/s/ *G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jessica@rbannonlaw.com
*Co-counsel for Plaintiff*